# Ethington, et al. v. Rigg.

(Decided January 23, 1917.)

## Appeal from Shelby Circuit Court.

1. Release—Who May Release Lien of Record.—Under the provisions of sections 498 and 498a of the Kentucky Statutes, no one has a right to release a lien of record except one who appears of record to be the owner of and entitled to the debt attempted to be released, and a release by one not so shown is void and of no effect.

2. Bills and Notes—Executed to Vendor in Deed.—Where a deed states that the deferred payments forming the consideration for the land are evidenced by notes that day executed, and without showing the person or persons to whom the notes are executed as payees, it will be presumed that they were executed to the vendors in the deed jointly, nothing appearing to the contrary.

3. Release—Release of Record—Who May Execute.—Where a note is payable to several obligees, either on its face or by presumption of law, any one of them may execute a valid release of them on record upon payment to him by the one from whom they are due.

4. Release—When Invalid.—Where an attempted release is signed by one of the vendors not in his individual capacity but as agent for a designated class of heirs, such release is invalid in the absence of a showing that the person who signed it was at the time such agent and that the heirs whom he proposes to represent are the ones to whom the released debt belonged at the time of payment.

5. Covenants—When Not Satisfied.—A covenant to execute a general warranty deed is not satisfied unless the tendered title is perfect and clear and free from all encumbrances so as to make it a marketable one, and a purchaser under an executory contract, which contract contained the stipulation for a warranty deed, is not required to accept the title wherein there are liens of record not legally released.

6. Release—Principal and Agent.—The fact of agency may not be established by the statements alone of the supposed agent, and a release of a lien upon real estate entered upon record and signed by one as agent for another is invalid in the absence of other legal proof that he was such agent.

7. Contracts—Action for Failure to Accept Deed.—In a suit for damages against a purchaser for failing to accept a deed and comply with his contract, the right of the defendant to refuse to accept the tendered title is governed by the condition of it at the time fixed for performance, and which right cannot be affected by a perfecting of the title by the vendor after that time so as to render the purchaser liable for damages for breach of contract.

8. Appeal and Error—Instruction—When Verdict Will be Affirmed.—Where a jury returns a verdict under instructions from the court

to which exceptions were taken, if the evidence shows that the same verdict should have been returned under directions of the court the judgment based upon it will be affirmed, although the court failed to give such instructions to the jury.

BEARD & RIVES and W. T. BECKHAM for appellants.

BEARD & PICKETT for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This suit brought by appellants (plaintiffs below) against the appellee (defendant below) to recover of him damages in the sum of $1,795.77, less a credit of $200.00 which will be hereinafter explained, grows out of the following facts: On November 20, 1913, plaintiff, Ida M. Ethington, wife of her co-plaintiff, A. L. Ethington, was the owner of a tract of land in Shelby county containing about 153 acres. On that day the plaintiffs entered into a written contract with the defendant, D. C. Rigg, to sell their farm to him at the price of $44.00 per acre, one-half of which was to be paid in cash at the date agreed upon for the execution of the deed, which was on or before March 1, 1914, "at which time first parties (Ethingtons) bind themselves to make second party (Rigg) a general warranty deed to said land." The other one-half was to be divided into four equal annual payments evidenced by notes bearing that date and drawing six per cent. interest from date. There were other stipulations having no bearing upon the questions presented. The land had been purchased by Mrs. Ethington from William Crafton and wife under a deed dated March 1, 1909; 134 acres of it was purchased by Crafton under a deed of date September 2, 1899, which deed was executed by W. B. Rigg and wife, Mary A. Rigg, Stephen Shelburn and wife, Mary T. Shelburn, William Russell and wife, Elizabeth Russell, T. J. Stodghill and wife, Lucy A. Stodghill, R. T. Rigg and wife, Amanda Rigg, J. C. Rigg and wife, Matilda Rigg, James M. Johnson and S. T. Johnson, J. C. Johnson and Lena Johnson and Mary E. Cosby, J. W. Cosby, her husband, E. G. Burnett, I. H. Reddish and wife, Mattie Reddish, and Henry Martin, guardian of Mary J. Rigg, as vendors. In that deed Crafton paid $617.06 cash, and executed his two notes for $531.72 each, one of them maturing on the 4th day of February, 1900, and the other on the 4th day of Feb-

ruary, 1901. There is nothing appearing in the face of the deed or appearing upon the records of the Shelby County Court showing the person or persons to whom such notes were executed. The only statement made in the deed with reference thereto is: "Notes for the deferred payments having been executed and bearing six per cent. interest per annum from the 4th day of February, 1899, until paid." Further along in the deed a lien is retained upon the land described and conveyed to secure both of the purchase money notes. On the margin of the record of this deed to Crafton in the county court clerk's office appears what purports to be a release of the lien retained for the payment of the two notes mentioned, which is in these words:

"The purchase money having been paid in full, I hereby release the lien retained herein. This Oct. 30, 1900. I. H. Reddish, Agent Rigg Heirs." This entry is attested by the county court clerk.

On February 28, 1914, Mr. Ethington, representing both himself and wife, presented to the defendant a prepared but unexecuted warranty deed for the land, which was objected to by the defendant upon the ground that the records of the Shelby County Court did not show a clear, unencumbered title, or a marketable one, because the entry above quoted, signed by I. H. Reddish, as agent for the Rigg heirs, did not show a valid release of the lien retained in the Crafton deed. Some few days thereafter plaintiffs tendered to the defendant a duly executed deed which, for the same reason, he declined to accept, and this suit followed.

The answer relied upon the facts constituting the defendant's reason for declining to accept the deed as a defense, and in a second paragraph, which was made a counter-claim, he sought to recover $200.00 from the plaintiffs which he had paid them at the time of entering into the written contract for the purchase of the land. The case was tried by a jury, and under the instructions of the court it returned a verdict for $200.00 in favor of the defendant, upon which judgment was rendered, followed by this appeal prosecuted by the plaintiffs.

Section 498 of the Kentucky Statutes provides: "Liens, by deed or mortgage, may be discharged by an entry acknowledging satisfaction of the same on the margin of the record thereof, signed by the person en-

titled to the same, or his personal representative, and attested by the clerk or his deputy, which, in the case of a mortgage or deed of trust, shall have the effect to reinvest the title in the mortgagor or grantor, or person entitled thereto.''

Section 498a sets out how the assignment of any lien note may be manifested of record, and subsection 3 thereof is:

''No person, except such as shall, from such record or assignment of record, appear at the time to be the legal holder of any note or notes secured by lien in any deed or mortgage, shall be permitted to release the lien securing any such note or notes, and any release made in contravention of this section shall be void; but this act shall not be held to change the existing law if no such entry be made.''

Under these provisions, it is plain that no one can execute a legal release of a lien retained in a deed except ''the person entitled to the same, or his personal representative,'' and such person is the one who appears ''at the time to be the legal holder'' of any note or notes secured by a deed or mortgage. Any attempted release by a person other than the one so appearing to be the owner is void under the provisions of subsection 3 of section 498a quoted above.

The question, then, in this case is: Did I. H. Reddish, as agent for Rigg heirs, possess any recorded authority to execute the release which he did? Upon the answer to this question depends the determination of this suit; for if he possessed such authority it was the duty of the defendant to have accepted the deed which plaintiffs tendered him and to have complied with the written contract to purchase the land by paying the cash payment and executing notes for the deferred payments as therein provided, but if Reddish had no such authority as such alleged agent to execute the release which he attempted to do, the plaintiffs failed to comply with their contract by the execution of the deed which they tendered. In the contract for the sale of the land the plaintiffs agreed to execute to the defendant a general warranty deed to same, and this covenant is not complied with unless the tendered title is a perfectly legal one, and one which would be accepted as marketable. Bodley, Etc. v. McChord, 4 J. J. Marshall, 475; Davis v. Dycus, 7 Bush. 4; Whitworth v. Poole, 29 Ky. Law

Reporter 1104. In the Davis case, upon this point it is said:

"There is no difficulty, we conceive, in construing the covenant of the appellee to make the appellant's general warranty of title. Any general covenant to convey *title,* if not restricted or qualified in its terms by any other stipulation, implies that the covenanter can convey a perfect legal title, regularly derived from the Commonwealth; and if he should be unable to convey such title his covenant will be broken."

We apprehend that no authority can be found holding to the contrary. The very purpose of such a covenant in a deed is to guarantee against not only an outstanding and superior title, but also against any encumbrance upon the title held by the vendor. So, if at the time for the performance of an executory contract for the sale of land the title which the vendor exhibits is one encumbered of record with a lien, his covenant to convey by general warranty is broken and the vendee is not compelled to accept the vendor's deed, although it may contain a covenant of general warranty. Bell v. Vance, Littell's Select Cases, 108, on page 110; 36 Cyc. 638.

Going now to the question as to the authority of Reddish to release the lien which he attempted to do as agent for Rigg heirs, we find nothing in that deed showing that he either individually or as such pretended agent, had any interest in the notes executed for the deferred payments therein mentioned. It might be said, however, that any joint obligee would have a right to collect a note executed to himself and others, and that his receipt of the obligation would be binding upon the other obligees and would constitute a complete acquittance of the payor.

We have no fault to find with this principle of law, nor have we any quarrel with another principle insisted upon by counsel for appellants, which is that when a deed provides for the execution of notes for deferred payments without specifying the person or persons to whom they were executed, it will be presumed that they were executed jointly to the vendors in the deed. But the admission of these two principles of law does not help plaintiffs under the facts of this case. It is true that I. H. Reddish in his individual capacity is one of the vendors who executed the Crafton deed, the

retained liens in which he attempted to release in the manner stated. However, he did not do this in his individual capacity, but only "as agent for Rigg heirs." There is nothing of record to show the fact of his agency unless it be his statement appearing upon the record to that effect. But it is a rule of universal application, and which has been recognized by this court in an unbroken line of decisions that the fact of agency may not be established by the statements alone of the supposed agent. Waiving this point, however, and for the purposes of argument conceding that his agency might be so established, the question then recurs as to which Rigg heirs he was agent of, i. e., whether he was the agent of all the vendors in that deed who may have been heirs of some Rigg ancestor, or whether he was agent for the heirs of some one or more of the six Riggs appearing as vendors in that deed. Clearly, there is nothing apparent from the record furnishing an answer to these inquiries. For aught that appears, Reddish may have collected his part of the deferred purchase money without having executed any release, and the same might be true as to each of the other vendors except the heirs of one for whom he may possibly have been acting as agent, and whose interest he attempted to release by the writing which he signed on the margin of the county court record. On the other hand, he may have been agent for the heirs of some one or more of the Riggs who executed the deed and have collected their portions and executed the release in question while the interest of all the other vendors may yet have been uncollected. Manifestly, these conditions leave the record of the title in great uncertainty and do not present a clear and perfect title which the law would compel the defendant to accept.

If it should be insisted that the proof upon the trial of this case was to the effect that the lien notes in the Grafton deed had been actually paid, and that the defendant therefore could not rely upon the shown condition of the record as a defense herein, it is sufficient to say that the law is that the rights of a vendee in a suit of this character (being one by a vendor to recover damages for the failure to perform an executory contract for the sale of land) are not to be affected by anything which may develop or occur after the time for the performance of his contract. He has a right to

rely upon the conditions as they appear of record at that time, and no perfecting of the title afterwards by the vendor will be permitted to relate back to the time for performance so as to deprive the vendee of his right of refusal to accept the title tendered by the vendor. In other words, the vendor cannot clear up or perfect his title after the time for the performance so as to perfect his right to sue the vendee to recover damages for a breach committed by his refusal to accept the tendered title when it appeared of record to be imperfect. Upholding this rule, it is said in 39 Cyc., 1925:

"Thus the purchaser may show, by way of defense, that there exists a superior outstanding title, that the vendor was unable to convey a good title at the proper time therefor." And again, on page 1983 of the same volume, it is said:

"A vendor, in order to recover for a breach of contract by the purchaser, must himself have been able and ready to perform his part of the contract, . . . . and if time is of the essence of the contract, he must have been able to perform promptly at the time stipulated."

This text is fortified by a long list of authorities, and is in perfect accord, not only with the general principles of law governing contracts, but also that especially applicable to sales of real estate. The rule is upheld by this court in the case of Smith v. Cansler, 83 Ky. 367. There is nothing in the cases of Logan v. Bull, 78 Ky. 607; Tapp v. Nock, 89 Ky. 414, or Cotton v. Ward, 3 Mon. 313, in conflict therewith. On the contrary, those cases recognize the rule as applicable when *time* is of the *essence* of the contract, and as we have seen from Cyc., and as upheld in the Smith case, *supra*, time is of the essence of the contract under the facts presented in this case.

It is true that under some circumstances the cases from this court just referred to in suits for a recision or specific performance of the executory contract, the plaintiff would be permitted to perfect his title even after suit and before decree; but inasmuch as this is a suit for damages for breach of performance and not one of either of the classes mentioned, such right to supply the defects in the plaintiff's title after the time for performance has expired is not allowed. Bearing upon this feature of the distinction between the reme-

dies at law and in equity, under circumstances similar to those we have here, it is said in 36 Cyc. 707:

"At law, time is always of the essence of the contract. Where any time is fixed for the completion of it, the contract must be completed on the day specified. But courts of equity make a distinction in all cases between that which is matter of substance and that which is matter of form. The principle has been firmly established from an early day in all ordinary contracts for the sale and purchase of land, that time is not, in equity, of the essence of the contract; that is to say, acts which plaintiff, by the terms of the contract, stipulated to perform on a given date, may be performed at a later date."

If, however, the principle just discussed had no existence in the law, and the plaintiffs in this suit at law had the right at any time before judgment to perfect their title so as to render the defendant liable in damages for his refusal to accept performance offered by plaintiffs, the proof upon the trial of this case fails to establish their right to recover. It is shown by the witness, Grafton, that he paid the purchase notes mentioned in his deed, but this would not be binding on the ones to whom he owed the money, for clearly they would have a right at any time before their cause of action became barred to enforce their lien against the land, and the judgment in this case could not affect in the least their right to do so, or be binding on them. The defendant, then, in that instance, would be subjected to expensive, annoying and perhaps protracted litigation with the possibility of having to pay the lien notes, and the law will not force him to accept a title fraught with such possibilities. So that in any view of the case we are clearly of the opinion that the plaintiffs failed to sustain their cause of action, and that the jury should have been instructed to return the verdict which it did return under instructions of the court, to which the defendant objected. 36 Cyc. 638. When the verdict is one which under the evidence the jury should have been instructed to return, the judgment rendered upon it will be affirmed, although the verdict was not returned under the directions of the court. Emler v. Fox, 172 Ky. 291.

Wherefore, the judgment is affirmed.