## Metcalf v. Tewmey, et al.

(Decided June 24, 1927.)

### Appeal from Mercer Circuit Court.

Mortgages.—Where purchaser of land made cash payment, assumed existing mortgage, and gave three purchase-money notes, one of which was sold and assigned, but the assignment not noted on record, as required by Ky. Stats., section 498a, and where land was later sold, in mortgage foreclosure proceedings to which purchaser of note was not made a party, to the original owner and assignor of note, who gave new mortgage to bank having no notice of assignment, held rights of bank, innocent mortgagee, were superior to rights of assignee of note, in view of failure to have lien assigned of record.

JOUETT & METCALF for appellant.

C. E. RANKIN for appellees.

Opinion of the Court by Chief Justice Clay— Affirming.

On October 22, 1919, W. B. Tewmey mortgaged his farm in Mercer county to Leslie M. Rue to secure a loan of $7,000. On January 1, 1920, Tewmey sold the farm to Elmo Robertson for $23,915. Of this sum Robertson paid $10,000 in cash, assumed the Rue mortgage of $7,000, and executed for the balance three notes of $2,-305 each, due in two, three, and four years, respectively, and secured by a lien on the property. On October 24, 1920, Tewmey sold one of these notes for value and before maturity to Thomas Metcalf, but the note was not assigned on the deed book in accordance with section 498a, Kentucky Statutes. On January 10, 1920, Robertson conveyed 23 9/10 acres of land to A. J. Bottom. On August 22, 1922, Rue brought suit in the Mercer circuit court against Robertson to enforce his mortgage lien. Tewmey and Bottom were made parties, but Thomas Metcalf, the purchaser of one of the notes, was not a party to the action. On the same date Tewmey filed an answer and cross-petition, in which he admitted his indebtedness to Rue, set up the execution and delivery to him of the three promissory notes for $2,305 each, and alleged that no part thereof had been paid, except the interest to January 1, 1921, and that, by reason of said notes and the lien retained in the deed to secure same, he had a valid lien on the property in the sum of $6,915, with 6 per cent interest from date, and that he was entitled to recover that sum of said Elmo Robertson and Eunice Robertson. He did not allege that he was the owner or holder of the notes, and merely filed copies of the notes. On final hearing Rue and Tewmey were each adjudged a lien on the property to secure their respective debts and costs, with priority in favor of Rue, and the land was ordered sold. Tewmey purchased the land for $9,577.66, and there being no exceptions to the report of sale, the sale was confirmed and the commissioner was directed to convey the property to Tewmey. To secure the money with which to pay for the property, Tewmey borrowed from the First National Bank of Harrodsburg, the sum of $3,500 and from the same bank, as trustee of Nannie J. Whiteneck, the sum of $7,500, and secured these loans by a mortgage on the property dated February 8, 1923.

After learning that the property had been sold in a proceeding to which he was not a party, Thomas Metcalf brought this suit against Tewmey, the First National Bank of Harrodsburg, individually and as trustee of Nannie J. Whiteneck, in which he asked a recovery against Tewmey and to be adjudged a lien on the property superior to the mortgage held by the bank individually and as trustee. During the pendency of the action the bank, individually and as trustee, filed suit against Tewmey on its mortgage and asked for a receiver to take charge of the farm and operate it pending the litigation. Thereafter the State Bank & Trust Company filed an attachment suit against Tewmey and the several actions were consolidated under the style of the First National Bank of Harrodsburg, etc. v. Tewmey. On final hearing it was adjudged that Metcalf had a lien on the property inferior to that of the bank individually and as trustee. From that judgment he appeals.

Section 498a, Kentucky Statutes, provides:

"(1) In recording mortgages and deeds in which liens are retained (except railroad mortgages securing bonds payable to bearer), there shall be left a blank space immediately after the record of such deed or mortgage of at least two full lines for each note or obligation named in said deed or mortgage.

"(2) When any note or notes named in any deed or mortgage shall be assigned to any other person, the assignor may, over his own hand, attested by the clerk, note such assignment in said blank space, and when any one or more of the notes named in any deed or mortgage is paid, or otherwise released or satisfied, the holder of said note or notes, and who appears from the record to be such holder, may release the lien, so far as such note or notes are concerned, by release, over his own hand, attested by the clerk.

"(3) No person, except such as shall, from such record or assignment of record, appear at the time to be the legal holder of any note or notes secured by lien in any deed or mortgage, shall be permitted to release the lien securing any such note or notes, and any release made in contravention of this section shall be void; but this act shall not be

held to change the existing law if no such entry be made.''

While it is true that the statute in providing for the assignment of liens on the record uses the word "may," it clearly provides that only the holder appearing from the record may release the lien, and that a release by any other person is not valid. Summers v. Kilgus, 14 Bush 449; Ethington v. Rigg, et al., 173 Ky. 355, 191 S. W. 98; Phillips v. Arnett, 164 Ky. 426, 175 S. W. 660. The purpose of the statute was to protect not only the holder appearing of record, but innocent third parties. It is true that the bank took the mortgages with knowledge that the vendor's lien retained by Tewmey had not been released of record, but that fact is wholly immaterial in view of what subsequently occurred. When the bank examined the title for the purpose of making a loan on the property, it found that Tewmey had acquired title by purchase at the judicial sale made pursuant to the judgment rendered in the action brought by Rue to enforce his mortgage lien and that Tewmey, who appeared of record as the sole holder of the lien by which the three notes of $2,305 were secured, was not only made a party to the action, but filed an answer and cross-petition, in which he set up the execution and delivery of the notes and asserted his lien. Though Tewmey did not allege that he was the owner and holder of the notes, and only filed copies of the notes, his failure was not questioned by any of the parties to the action; on the contrary the judgment awarded him a second lien to secure all three notes. If it be claimed that his failure to allege that he was the owner and holder of the notes, or to file the originals, was sufficient to put the bank on inquiry, a question we need not decide, it is sufficient to say that due diligence required the bank to go no further than to examine the record, which would have disclosed that Tewmey, and no other person, was the holder of the lien. There was no purpose on the part of Rue, who brought the suit, or of Tewmey, who asserted his lien therein, to keep the liens in force, or to sell the property subject to the liens; on the contrary, the only object of the suit was the enforcement of the liens by a sale of the property. As before stated, all those appearing of record as having any interest in the property or any liens thereon were made parties. The liens were

adjudged with priority in favor of Rue, and the land was ordered sold to satisfy the liens. It was sold, and Tewmey became the purchaser. It is not claimed that the bank had actual notice that Metcalf was the owner of one of the notes secured by the lien retained in the deed. In the circumstances it had the right to rely on the record of the deed and the proceedings in the subsequent suit by which the land was sold and Tewmey acquired title. As to it, an innocent mortgagee, the lien retained in the deed to secure the three notes of $2,305 each was extinguished by the judgment of sale, and the commissioners' deed conveying the title to Tewmey (Lear v. Totten, 14 Bush 101; New Orleans National Bank v. Adams, 109 U. S. 211, 3 S. Ct. 161, 27 L. Ed. 910), and was as effectually released as if it had been released by Tewmey on the margin of the recorded deed. From all of which it follows that the bank occupies a better position than Metcalf, whose loss is attributable solely to his own negligence in failing to have his lien assigned of record.

Judgment affirmed.