## Stewart v. Black et al.

(Decided Jan. 26, 1934.)

512

FOWLER, WALLACE & FOWLER for appellant.

S. MONROE NICKELL and E. S. DUMMITT for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On August 4, 1930, the appellant and plaintiff below, A. E. Stewart, and the appellee and defendant below William Carson Black, entered into a written contract whereby they agreed to exchange certain parcels of real estate in Fayette county (the one for the other) upon certain terms and conditions set out in the contract, two of which were: (a) That the respective deeds were to be executed "not later than thirty days from date"; and (b) that they should be general warranty ones when executed, and which meant, and it is so conceded, that the title conveyed should be a free, unincumbered, and marketable one. The parcel proposed to be conveyed by plaintiff was a brick building and lot in Lexington, Ky., the ground floor of which was a storeroom and the second story equipped for residential purposes; while the one proposed to be conveyed by defendant was a farm containing about 75 acres, located about six miles from Lexington. The respective properties were valued in the contract by the owners at $9,500 each, and as a part of the consideration each contractor assumed the payment of certain incumbrances on the property of the other, and other obligations were assumed in the contract to equalize the agreed valuations.

On August 23 thereafter, plaintiff tendered to defendant a deed conveying to the latter his city property and demanded a deed from defendant conveying to him (plaintiff) the farm, pursuant to the provisions of the contract. The latter declined to accept the deed tendered to him by plaintiff, and also refused to execute one conveying his farm to plaintiff upon the ground that plaintiff's tendered title to his city property was not such as was contemplated by the contract in several particulars, one of which was that there was an incumbrance upon it consisting of the amount of an assessment for the construction of a sewer in the street fronting it, and which had been ordered, and the sewer practically completed, at the time the contract was entered into, and which was not mentioned at that time,

nor did defendant have knowledge of it; if indeed, such knowledge on his part is material to the case.

On September 23, 1930, plaintiff filed this equity action in the Fayette circuit court against defendant and the master commissioner of the Fayette circuit court, and in his petition he set out the contract, the tendering to defendant of a deed to his property, the request for a deed from the latter to him, and pointing out some defects in the title of defendant, but which he agreed to waive, and he sought specific performance of the contract. One of the defects to which he referred in his petition was that defendant had shortly before entering into the contract purchased his farm at a decretal sale made by the master commissioner of the court, and had executed three bonds (payable in six, twelve, and eighteen months) for the purchase price, but had not paid any of them, nor had he received a deed from the commissioner, and plaintiff prayed that the contract be construed as a transfer of defendant's bid to him, and that the commissioner be ordered and directed to execute to him a deed pursuant thereto.

In another paragraph of the petition he relied on the facts set out in its first one, and prayed for a judgment for damages against defendant (which he laid at $3,000). In a later amended petition plaintiff withdrew all relief for specific performance and elected to prosecute his action solely as an ordinary one for the recovery of damages. Defendant's answer put in issue plaintiff's right to the relief he sought and counterclaimed for damages because of plaintiff's failure to comply with the contract by tendering to him the character of title therein contemplated, or within the time stipulated. Following pleadings and motions made the issues and upon final submission, after extensive proof taken, the court dismissed both the petition and defendant's counterclaim. Both parties objected and prayed for and were granted appeals to this court; but plaintiff brought the record here, and defendant has been granted a cross-appeal in this court.

A large portion of the testimony (perhaps more than half of it) is directed to the damages that each party claims to have sustained because of the respective alleged breaches of the contract, but which, under the conclusions we have reached, becomes immaterial and will not be again referred to or discussed. A consider-

able part of the remaining portion of the record is taken up with propositions and offers to waive or correct certain claimed defects in the respective titles and to reach an agreement, but which were abortive, and for the same reason such matters will also not be further referred to. We find nothing in the record tending to show that defendant waived in any manner his right to insist upon a strict performance of terms (a) and (b), supra, of the contract, and that being true, the legal question presented is: Whether plaintiff's offer to comply with the contract by executing and tendering to defendant his deed at the time it was done was sufficient in law to entitle him to recover damages for its alleged breach by defendant in an ordinary action, which, as we have seen, was the sole relief sought by plaintiff after withdrawing his prayer for specific performance. We will now endeavor to answer that question.

This record presents questions practically identical with those involved in the case of Vogt v. Shumate, 213 Ky. 503, 281 S. W. 514, 515, the opinion in which is sustained by the authorities therein cited, and many others that could have been cited, and which we think deny to plaintiff the right to recover damages in this case and sustain the court's judgment in dismissing his petition. That case was one for the same relief, based upon identical facts, i. e., a suit by plaintiff to recover damages upon the refusal of defendant to accept a deed tendered to him by plaintiff, solely upon the ground that an incumbrance rested upon the lot proposed to be conveyed (which was a valuable city one) in the form of projections of stone window sills in the adjoining building over the lot for a space of about 1½ inches, and which the owner of that building had acquired the right to maintain. The involved lot fronted the street 50 feet, and its frontage was thus reduced to the extent of such encroachment (1½ inches). Defendant relied on that fact as a defense to the action, and which the trial court sustained and dismissed plaintiff's petition, which judgment we affirmed. In the course of the opinion we said: "At the outset it may be admitted that the encroachments complained of are small, apparently insignificant, and what some might term frivolous, but our investigation of the law on the subject convinces us that in a case of this kind, where damages are sought for a violation of the contract of purchase, the rights of the parties are governed by the contract into which they

entered and that the court has no right to make a different one for them. The rule is different in equitable actions, as for instance one for specific performance, in which case the malleable and flexible principles of equity may be applied, and thereby performance of the contract enforced by allowing the purchaser a proportionate abatement of the purchase price for the insignificant defects or encroachments upon the title. Especially does that seem to be the rule where the defect complained of 'does not materially affect the value of the property and the purchaser can be made whole by a proportionate reduction of the purchase price.' "

Approving a quotation from the case of Place v. Dudley, 41 App. Div. 540, 58 N. Y. S. 671, where the same character of case was under consideration and the encroachment was only 1½ inches upon a lot 75 feet wide, we also said: "Whether the apparently inconsiderable deficiency of a strip an inch and a half in a frontage of 900 inches might be disregarded if this case would be disposed of on the rule of compensation or allowance applied by courts of equity in suits for specific performance is not before us. Here the objection of the plaintiff is founded, not only upon a slight deficit in quantity, but upon the existence of an encroachment on the land, to which he was entitled under the contract of a wall of an adjoining building. Although there was no proof to show to what extent the land was depreciated in value by reason of that encroachment, still it could not be adjudged as matter of law that it was an immaterial thing, and that the plaintiff was bound to take title and pay the full price, notwithstanding this encroachment upon the premises, for such is the effect of the ruling. There was a technical breach of the contract by the vendor. It furnished a legal reason or excuse to the vendee to refuse to take the title."

In that opinion we also referred to the New Jersey case of Herring v. Esposito, reported in 94 N. J. Eq. 348, 119 A. 765. The lot there involved was 25 feet wide and the contract of sale stipulated for a perfect title with "no encroachment thereon," but an adjoining building did encroach thereon 1 5/8 inches at its rear end. Specific performance was sought, but the court denied the relief because there was a contract against encroachments, and that the one existed though small was of considerable proportion in value, and said: "To

disregard the clause of the contract quoted above would be to draw a new contract for the parties, upon which their minds have never met, and that is a policy that courts have universally refrained from acting upon.'' In summing up our conclusions in the Vogt Case we said: ''As hereinbefore stated, courts of law are authorized and empowered to do no more than enforce a contract as made by the parties. It has no right to take into consideration what it may deem or term an immaterial or frivolous matter, since the parties to the contract may have entertained an entirely different notion, and, if for any such reason the court could disregard such provisions, the door would then be opened for each court to alter or change contracts according to its conception of materiality, and that, too, without compensation to the other party or abatement of the price agreed to be paid by him. Neither can it be successfully maintained that to enforce such a contract under such conditions would give to the vendee substantially what he contracted for, since, as we have seen, he is entitled to have exactly what he contracted for, especially if he is required to pay the full contract price, which was the theory upon which this case proceeded against defendant.''

There is nothing in the case of Cook v. Johnson, 241 Ky. 452, 44 S. W. (2d) 547, militating against the principles approved in the Vogt opinion. On the contrary, we approved and applied in that case the same ones that governed our decision in the Vogt opinion. They both announce the rule to be that the rights of the parties in an action to *recover damages* for failure to perform a real estate contract are governed by the facts as they existed on the day performance was due, and not that they may be cured or corrected after that day, or after suit brought as may generally be done where specific performance is the relief sought. In the Cook opinion we referred to and quoted from the prior one of Hurt v. Sands Company, 236 Ky. 729, 33 S. W. (2d) 653, 655, which is strictly in line with both the Vogt and Cook Cases. See also Ethington v. Rigg, 173 Ky. 355, 191 S. W. 98.

But, it is insisted by learned counsel for plaintiff that the alleged incumbrance for the public improvement was not one at the time the contract was made, nor upon the date fixed for performance, since the proper authorities of the city of Lexington had not ap-

portioned the amount chargeable to the involved lot. All of the work had been completed at those times, except finishing filling the ditch in which the sewer pipe was laid. The statute automatically attached the lien to the abutting property, and all that remained to be done at the time of the contract, and on the date for its performance, was a mere calculation of the amount; in other words, an apportionment against the property. Text authority sustaining the views we have expressed may be found in 27 R. C. L. 506, sec. 231, wherein it is said, inter alia: "Overdue and unpaid taxes and special assessments constitute incumbrances and may render the title unmarketable and justify the purchaser in refusing to accept the title, unless they are discharged." And on page 517, sec. 245, the text, under the heading "Time of Existence of Defect in Title," it is said: "On the other hand, if the vendor is able to convey a good title when the time for performance arrives, this is sufficient though his title may have been defective at the time of the making of the contract." All authoritative text-writers on the subject are to the same effect and nothing could be gained by incumbering the opinion with the citation of them:

The conclusion so reached renders it unnecessary to consider the other alleged defects in plaintiff's title urged by defendant as a reason for his failure to comply with the contract, except to say that they are mostly without foundation in fact or in law. Since plaintiff did not remove the assessment lien against his lot before the time for performance nor did he do so before tendering his deed to defendant, he was not in an attitude to insist upon performance by defendant at the time he did so, nor could he perfect his title by removing the incumbrance after filing his action so as to make it relate back to the date for performance, and thereby perfect his then incumbered title. We conclude, therefore, that the court did not err in dismissing his petition.

The disposition of the cross-appeal of defendant requires only a brief consideration. To begin with, he had no legal title to the involved farm that he was proposing to convey to plaintiff, either at the date of the execution of the contract, or at the time for performance of it, and, so far as we are able to find from the record, he never obtained a deed to it at any time before judgment. In addition, he made some contentions that the testimony does not sustain and which were the

only ones urged by his counsel as reasons for his refusal to perform when such determination was first made. It is, therefore, made manifest that defendant's determination to breach the contract was first made on insufficient grounds, and which he insisted on and urged throughout the litigation in connection with the one we have hereinbefore discussed, and that such determination on his part would have prompted him to pursue the same course independently of that objection. It is, therefore, clear that he occupies no position to recover damages against plaintiff when he was never in an attitude to vest the latter with legal title to the farm, and when he was urging groundless reasons for refusing to comply with the contract himself. The court, therefore, did not err in dismissing his counterclaim.

Wherefore, the judgments dismissing the petition and dismissing defendant's counterclaim are each affirmed. Each party will pay one-half the costs of this appeal.