ROCK ISLAND BANK AND TRUST COMPANY, Plaintiff-Appellant, *v.* CHARLES STAUDUHAR *et al.*, Defendants-Appellees.

Third District   No. 77-364

Opinion filed May 15, 1978.

Peter Lousberg, of Klockau, McCarthy, Lousberg, Ellison & Rinden, of Rock Island, for appellant.

William M. Walker and James J. Coryn, both of Coryn, Walker and Meehan, and Stuart R. Lefstein, of Katz, McAndrews, Durkee & Telleen, both of Rock Island, for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Rock Island County which denied the prayer in the second amended complaint of the Rock Island Bank and Trust Company to reform or set aside a release of a judgment taken by the plaintiff against the defendants Leo C. Gannon and Eileen R. Gannon. The judgment also denied the plaintiff's prayer for a judgment against the defendants.

The scenario of events which resulted in this appeal commenced on July 22, 1969, when the defendant Leo C. Gannon and the former defendant Charles R. Stauduhar executed a promissory note in the amount of $150,000 payable to the plaintiff bank. The note was due and payable in six months. The loan was made to the defendants in order to assist them financially in their efforts to purchase the Fort Armstrong Hotel located in Rock Island. A land trust for the hotel was established with the plaintiff serving as trustee.

As of the date of the execution of the note written guarantees were executed in favor of the plaintiff bank to secure the obligation of the defendants Leo C. Gannon and Charles R. Stauduhar. One guarantee was executed by the defendant Eileen R. Gannon which guaranteed both defendant Lee C. Gannon and Charles R. Stauduhar on the note. A second guarantee was executed by defendant Leo C. Gannon which guaranteed his own obligation on the note and the obligation of Charles R. Stauduhar. Charles R. Stauduhar and Joan M. Stauduhar executed similar guarantees; however, each of these parties have filed for

bankruptcy and their liability was not litigated in the trial court proceedings which resulted in this appeal.

The defendant Leo C. Gannon as a 50% beneficiary of the land trust directed the plaintiff bank to place one-fourth of the trust (being one-half of his interest) in the name of his wife, defendant Eileen Gannon, who was aware of the transfer.

The initial note was not paid but a series of renewals of the same were made after payment of accrued interest. Charles Stauduhar on one occasion made a payment of $20,000 on the principal of the indebtedness and in March of 1972 the defendant Leo Gannon borrowed $12,000 from the plaintiff and from this loan $6,500 was paid on the accrued interest on the indebtedness of the parties. No release was given to the defendant Leo C. Gannon when he negotiated this personal loan. The personal loan of $12,000 was ultimately repaid to the plaintiff.

Upon the payment of accrued interest the last renewal note in the sum of $130,000 was executed by the defendant Leo C. Gannon and Charles Stauduhar on April 1, 1972. This note was due and payable in one month.

Adversity continued to plague the operation of the hotel so the defendant Leo C. Gannon sought to borrow $20,000 from the National Bank of Moline. If the loan could be negotiated the money obtained was to be applied on the operating expenses of the hotel and it was not contemplated that any of the proceeds would be applied on the loan from the plaintiff bank.

The defendant Leo C. Gannon had two discussions concerning the $20,000 loan with the president of the Moline bank, Sam Harris. An application for the loan was made and at such time the defendant Leo Gannon was unaware of the fact that a judgment had been taken against him by the plaintiff on the renewal note of April 1, 1972. The confessed judgment was in the sum of $143,837.50, which sum included interest and attorney fees. The Moline bank discovered this judgment when it conducted a search of the records before committing itself to the $20,000 loan which was sought by the defendant Leo C. Gannon.

The plaintiff bank had directed an attorney Galvin to take judgment on the note of April 1, 1972, and this was done on May 9, 1972. The judgment was taken against both of the Gannons and both of the Stauduhars even though there was no confession of judgment clause contained in the written guarantee documents. A motion to vacate the judgment as to Joan Stauduhar was made by her and allowed. The defendant Eileen R. Gannon made no appearance in this proceedings.

The Moline bank upon learning of the confessed judgment taken by the plaintiff informed the defendant Leo C. Gannon that they would not loan him the $20,000.

While the testimony is somewhat conflicting, it is established that Sam

Harris of the Moline bank called Mr. Miller, president of the plaintiff bank, and after this conversation Miller directed Mr. Young, trust officer of the plaintiff bank, to have the confessed judgment set aside as to the defendants Gannon only. Attorney Galvin prepared a release or satisfaction of judgment as to the Gannon's and after being inspected by an attorney of the defendants Gannon the release of judgment was recorded on May 16, 1972, and filed in court on June 1, 1972.

The $20,000 loan was made by the Moline bank to defendant Leo C. Gannon and all of the proceeds of this loan was used to pay outstanding bills which had accrued as operating expenses of the hotel.

In October 1972, the plaintiff bank president Miller called attorney Galvin and asked him why the defendant Leo Gannon had not been making any payments on his obligation to the bank. Attorney Galvin talked with Leo Gannon and during the trial of this cause testified that the defendant Leo Gannon acknowledged that he knew he was still obligated to the plaintiff bank. It was the testimony of the defendant Leo Gannon that he did not ever recall making such an acknowledgement, that no one from the plaintiff bank ever advised him that he was still liable for the $130,000 obligation after the judgment was released. He further testified that he never made any further payments to the plaintiff bank after May 16, 1972, which was the date the release of judgment was filed.

A petition to reform the release or satisfaction of judgment was filed by attorney Galvin for the plaintiff bank. After substitution of counsel for both the plaintiff and defendants and various amended pleadings were filed a hearing on the merits of the matter was commenced on November 10, 1976.

Subsequent to the taking of evidence the attorney for defendant Leo Gannon attached an affidavit of the plaintiff bank president, Mr. Miller, to a brief which he prepared. This affidavit was not referred to by anyone during the course of the trial nor was it offered as an exhibit; however, it had been submitted to the court in support of a plaintiff's motion to strike defendant Gannon's motion to dismiss or in the alternative to vacate the release and satisfaction of judgment. This motion was made prior to the commencement of the actual trial. The court denied a motion by the plaintiff to strike the affidavit from the brief. As we have previously stated the court entered judgment on all counts for the defendants and against the plaintiff and this appeal ensued. A further recitation of the facts concerning this litigation will be set forth as they become pertinent to the issues of this appeal.

The plaintiff presents as the first issue for review the overall question as to whether the trial court should have reformed or granted a rescission of a release (satisfaction) of judgment which was given to the defendants Gannon in order to permit them to obtain a loan, thereby permitting the

plaintiff to collect the underlying obligation upon which the confession of judgment was predicated.

In support of the above general issue raised by the plaintiff, it is contended that a release is contractual in nature and that there was no meeting of the minds of the parties concerned or mutual assent to support a release and satisfaction of the obligation represented by the promissory note and upon which judgment was taken. In examining the plaintiff's brief in support of this contention we conclude that the touchstone of the argument presented is based upon the "mutual mistake" theory.

It is noted that the mutual mistake theory was first raised by the plaintiff in a motion to strike defendant Gannon's motion to dismiss or in the alternative to vacate release and satisfaction of judgment. This motion of the plaintiff was supported by affidavits of the plaintiff bank president Miller and its attorney Galvin. Prior to the filing of the motion to strike the plaintiff had filed a petition to reform the release. In that petition the plaintiff alleged by and through attorney Galvin, who had prepared the release, that he (Galvin) intentionally and knowingly executed the full release and satisfaction, that it was the expressed intent of all parties that said release was to be a "partial release" only, releasing only certain of defendant's properties. It is necessary for us to summarize the testimony of attorney Galvin which was later adduced during the course of the trial of this cause. Galvin testified that he was employed by Donald Young, trust officer of the plaintiff bank and an attorney in his own right. Galvin further testified that he was directed to prepare a release, that he was specifically told to release only the defendants Gannon and that he felt by executing the document in question he had released the entire Gannon obligation. He further testified that the first time he heard anything further about the release was some five months later when he received a call from Miller, president of the plaintiff bank, who inquired as to why Gannon was not making any payments. It was Galvin's testimony that at the time he received this call he felt that the Gannon portion of the case had been closed. It was after receiving the Miller call that according to the testimony of Galvin he for the first time met with the defendant Leo Gannon.

We set forth the initial pleadings of the plaintiff, the allegations contained therein, and a summary of the testimony of attorney Galvin adduced during the course of the trial to illustrate that the averments contained in Galvin's affidavit supporting the plaintiff's motion to strike are in direct contradiction to previous allegations and subsequent testimony. We are of the opinion that other than the averments contained in attorney Galvin's affidavit and the affidavit of plaintiff bank president Miller (we will address ourselves to the contents of the Miller affidavit later) the plaintiff throughout all the proceedings concerning this litigation

was unable to produce any evidence in support of its claim that the release and satisfaction of judgment was the result of a mistake.

From an examination of the record it is clear that Galvin intended to execute a release, that he was authorized to do so by an officer of the bank who was an attorney, and it can only be presumed that the bank officer knew full well the effect of a release. It is also clear that the defendant Gannon did not negotiate the execution of the release but that it resulted from a call by Sam Harris, president of the Moline bank, to Miller, president of the plaintiff bank, who testified that he made the call and undoubtedly indicated that a release of the plaintiff's judgment would be required if he (Harris) were to make a $20,000 loan to Leo Gannon.

■■ Assuming that a mistake occurred, it was a mistake made solely by the plaintiff and a mistake on the part of one party only is not adequate grounds for relief. The mistake must be shared by both parties and must relate to the same subject matter. See 66 Am. Jur. 2d *Release* §18, at 693 (1973), wherein it is stated:

> "The mistake of one party is not an adequate ground for relief; the mistake, to be ground for relief, must be shared by both parties and must relate to the same subject matter. * * *"

A person claiming that a release is invalid because of a mistake must show that the mistake is mutual. A unilateral or self-induced mistake will be insufficient to void a release. *Ogren v. Graves* (1976), 39 Ill. App. 3d 620, 350 N.E.2d 249; *Welsh v. Centa* (1966), 75 Ill. App. 2d 305, 221 N.E.2d 106; *Hudson v. Thies* (1962), 35 Ill. App. 2d 189, 182 N.E.2d 760, *aff'd* (1963), 27 Ill. 2d 548, 190 N.E.2d 343.

■■ In the instant case there is no evidence to support any finding that there was an agreement between the parties relating to a release. The manner that the release was to be effected and executed was left entirely in the hands of the plaintiff. The defendant Leo Gannon did understand that he was to be released from the confessed judgment, but he entered into no conversation with the plaintiff about the release and the form or manner of its preparation and consequently if there was any mistake (and as we have previously stated the evidence does not support such a finding) the mistake was solely that of the plaintiff. There are no allegations of fraud, misrepresentation or any other grounds in the instant case which would invalidate the release even though only a unilateral mistake was proven.

The plaintiff cites two cases in support of his contention that it is not necessary that there be mutual mistakes in order to void a release. The cases are *Jonas v. Meyers* (1951), 410 Ill. 213, 101 N.E.2d 509, and *Illinois Bell Telephone Co. v. Charles Ind Co.* (1954), 3 Ill. App. 2d 258, 121 N.E.2d 600. Both cases are distinguishable on the facts from those present in the instant case. In the *Jonas* case a woman, quite ill, conveyed to her

nieces interest in certain real estate. The conveyance was a gift and made without the knowledge of the donees. It was later discovered that the grantor had conveyed real estate which she did not intend to convey. The court allowed the deed to be reformed. In so doing the court stated, "It is well settled that there must be mutuality of mistake before a deed or other written contract can be reformed." The court, however, in permitting reformation noted that the grantor was a voluntary donor of a gift to donees without notice and held that under such circumstances an exception to the mutual mistake rule should be allowed. In the instant case the plaintiff was not a donor, the recipient had full knowledge of the release and the evidence will support a finding that the plaintiff benefitted by preparing, executing and filing the release.

In the *Illinois Bell* case the telephone company had a claim against the defendant for damages to an underground cable. An agent of the company forwarded a credit memorandum to the defendant evidencing payment of the sum due and owing. The defendant had paid nothing, there had been no conversations between the parties and the defendant was unable to offer any explanation as to why he received the memorandum from the plaintiff. A pure clerical error had occurred. The court held that whether an instrument is an effective release depends upon the intention of the parties and found that the memorandum received by the defendant was not an effective release. The facts in the *Illinois Bell* case are in no way analogous to those present in the case before us. In the instant case there was no clerical error. Attorney Galvin was instructed to prepare a release, intended to do so and did so. We also had present in the instant case conversations concerning what was needed by the defendant Leo Gannon, to-wit, a release. The defendant Gannon was also able to explain why he received the release.

We cannot agree with the plaintiff that the release in question resulted from a mistake and there is certainly nothing in the record to support a finding that a mutual mistake occurred.

■■ ■ The plaintiff further argues that the release given to the defendants Gannon must fail, since it was not supported by any valid consideration. We are not unmindful of the elementary rule of law that an instrument affecting the rights of property, executed without consideration, has no binding force or effect in the law and can be voided by the parties. In order to trigger or activate this rule of law there must be a showing of lack of or insufficient consideration. In the instant case there was good and sufficient consideration received by the plaintiff to sustain the validity of the release. The evidence discloses that the plaintiff was the trustee of the Fort Armstrong Hotel and its largest creditor and could only benefit by the payment of the hotel's bills. The plaintiff's president Miller testified that the plaintiff definitely benefited from the payment of $20,000

worth of the hotel's obligations. Another plaintiff bank executive testified as to attempts to work out a lease-purchase agreement whereby the plaintiff and all other creditors would hopefully be paid. It was the testimony of defendant Gannon that it was his idea that the $20,000 loan would give the man operating the hotel a little breathing room so that a sufficient cash flow could be generated to meet all obligations. We are of the opinion that this evidence clearly established good and sufficient consideration.

The plaintiff also argues that in the instant case the underlying obligation of the defendant Leo Gannon as evidenced by the promissory note did not merge with the judgment and therefore the release when given did not extinguish the obligations that the defendants Gannon had on the promissory note.

Stated otherwise, the plaintiff's position is that the "release and [satisfaction] of judgment" was merely a manner of releasing the judgment that was entered but that it was the intent of the parties to retain in full force and effect the underlying obligation. We find no evidence whatsoever to support the plaintiff's contention that there was ever any understanding or that it was the intention of any of the parties that the underlying obligation was to remain in full force and effect after the release was given. The release is clear and unambiguous, it released the judgment and likewise the underlying obligation.

■■ The general rule is that by a judgment at law or a decree in chancery, the contract or instrument upon which the proceeding is based becomes entirely merged in the judgment and loses all its vitality and ceases to bind the parties to its execution. Its force and effect are then expended, and all remaining legal liability is transferred to the judgment or decree. Once becoming merged in the judgment, no further action at law or suit in equity can be maintained on the instrument. *Doerr v. Schmitt* (1941), 375 Ill. 470, 31 N.E.2d 971; *Peoria Savings, Loan & Trust Co. v. Elder* (1897), 165 Ill. 55, 45 N.E. 1083.

■■ We deem it to be significant that the plaintiff does not support his exception to the merger rule position with the citations of any cases. We do not find this surprising since the law of merger as to judgments or decrees appears to be well settled. The obligation set forth on the promissory note in the instant case merged with the judgment taken by the plaintiff and when that judgment was released the underlying obligations were extinguished as to the defendants.

The plaintiff claims that if there was an effective release of judgment it did not likewise release the guarantors of the note.

A guaranty contract is defined as an enforceable undertaking or promise on the part of one person which is collateral to a primary or principal obligation on the part of another, and which binds the obligor to

performance in the event of nonperformance by such other, the latter being bound to perform primarily. 38 Am. Jur. 2d *Guaranty* §2, at 997 (1968).

The key words in the above definition are "which is collateral to a primary or principal obligation on the part of another." In the instant case defendant Leo Gannon was primarily liable for the payment of the renewal note of April 1, 1972. He signed it along with Stauduhar and by so signing made himself liable for payment of the entire note even if Stauduhar defaulted. He was directly not collaterally guaranteeing the obligation of Stauduhar and himself by signing the note. We might well ask what more could he have done? What was the effect of the written guaranty? Answering these questions, the defendant Leo Gannon couldn't have done more to protect the bank for he was primarily liable for the entire obligation evidenced by the note when he executed it. The written guaranty executed by the defendant Leo Gannon can only be classified as surplusage. It afforded the plaintiff no further protection than it already had. We are of the opinion that the defendant Gannon's attempt to collaterally guarantee the obligation of another party was meaningless since he was already primarily and directly obligated for the entire obligation.

■■ Assuming *arguendo* that the written guaranty executed by the defendant Leo Gannon was not meaningless, it was nevertheless extinguished when the bank released him from liability for the confessed judgment. At that time there was no longer any obligation *in esse* to which he was liable and which he could guarantee. We are of the opinion that the release of the primary obligation to Gannon constituted a release of the entire obligation. To hold otherwise could well lead to dire consequences; it would permit a creditor to effect a compromise settlement with a debtor of a primary obligation, then at a later date the creditor could again pursue the debtor on the basis of a written guaranty for the balance of the indebtedness. The law does not countenance or assist such possibilities.

The plaintiff further asserts as to the defendant Eileen Gannon that she is liable as a guarantor for the obligation evidenced by the renewal note of April 1, 1972. It should be noted that the note was executed only by the defendant Leo Gannon and Stauduhar. On the face of it is typed "Personal Guarantees—Mrs. Eileen R. Gannon—Joan M. Stauduhar—No Limit." Eileen R. Gannon also signed a written guarantee which guaranteed the payment of the loan evidenced by the renewal note. The plaintiff bank through its corporate officers directed attorney Galvin to take judgment on the note. This direction of the bank was fulfilled by attorney Galvin, who took judgment against both Gannons and both Stauduhars. We deem it significant that judgment was taken against the

defendant Eileen R. Gannon even though she was not a signer of the note and the guaranty agreement which she executed contained no provisions for a confession of judgment. While we may be repetitious, we nevertheless deem it important to note that the plaintiff bank again through its corporate officials called upon attorney Galvin to perform some legal services, to-wit, set aside the judgment as to the Gannons only. Attorney Galvin complied with the directions he received and the release which was filed related to only the defendants Leo C. Gannon and Eileen R. Gannon.

We have previously determined that the release was supported by sufficient and valid consideration so we will direct our attention as to whether the voluntary appearance of the defendant Eileen R. Gannon in the release of judgment constituted a general appearance which recognized the jurisdiction of the court. We agree with the trial court which found that the judgment taken against the defendant Eileen R. Gannon was taken without jurisdiction of her person. Had she chosen to do so she could have moved to vacate the judgment as far as it concerned her; however, she chose not to do so but instead voluntarily appeared through her attorney in the release proceedings and thereafter in the litigation which ensued.

We are of the opinion that the voluntary appearance of the defendant Eileen R. Gannon in the release of judgment proceedings constituted a general appearance which recognized the jurisdiction of the court.

■■ When a party appears for any purpose whatever, except to object to the process or service, he waives all objections thereto, although the process may be void or there may have been no service. *Kelly v. Brown* (1923), 310 Ill. 319, 141 N.E. 743; *Mitchell v. Jacobs* (1885), 17 Ill. 235; *People v. Estep* (1955), 6 Ill. 2d 127, 126 N.E.2d 637; *Hill v. Dillon* (1969), 106 Ill. App. 2d 201, 245 N.E.2d 649; *Mullaney, Wells & Co. v. Savage* (1975), 31 Ill. App. 3d 343, 334 N.E.2d 795.

■■ ■ The trial court in a written opinion found that the judgment taken by the plaintiff against defendant Eileen R. Gannon on her guarantee was taken without jurisdiction of the person of the defendant but by accepting the release and recording of the same she ratified the judgment and the subsequent release which she received from the plaintiff was valid and extinguished her liability for the payment of the obligation.

In the light of the law as we have set forth in the above cited cases we agree with the trial court. The action of the plaintiff coupled with the action of the defendant Eileen R. Gannon effectively released her as a guarantor on the note.

We have heretofore alluded to an affidavit of the president of the plaintiff bank, one John Miller. At the conclusion of the hearing before the

trial court but prior to the rendering of a decision, the trial court requested that counsel prepare and submit to the court briefs. Counsel for the defendant Leo C. Gannon appended to his brief an affidavit which Miller had made prior to the actual trial of this case but which was made in support of a pretrial motion of the plaintiff to strike the defendant Leo C. Gannon's motion to dismiss or in the alternative to vacate the release and satisfaction of judgment. No reference was made or testimony adduced during the trial of this cause as to the Miller affidavit.

The plaintiff moved to strike the affidavit from the defendant's brief. From the record it is apparent that counsel for the defendant Eileen R. Gannon also adopted and incorporated the affidavit in his brief. The trial court denied the motion to strike and plaintiff assigns such denial as error.

Without setting forth a recitation of the contents of the Miller affidavit, we deem it sufficient to state that it was not beneficial to plaintiff's case since the statements in the affidavit were contrary to statements made by Miller in the course of direct and cross-examination during the trial.

■■ We are of the opinion that the trial court as trier of fact was entitled to take judicial notice of the proceedings before it and the contents of the court records relating thereto, of which the affidavit was already a part. *People ex rel. Winkler v. Chicago & Eastern Illinois Ry. Co.* (1929), 336 Ill. 506, 168 N.E. 294.

■■ We find that no error was committed by the inclusion of the Miller affidavit in the briefs of the defendants.

For the reasons set forth the judgment of the circuit court of Rock Island County is hereby affirmed.

Judgment affirmed.

BARRY, P. J., and ALLOY, J., concur.