**In re William SCHLECHT, aka Bill Schlecht, dba The Boot, Debtor,**

**William SCHLECHT, Plaintiff,**

**v.**

**STATE OF ALASKA, represented by the Director of Veteran's Affairs; First National Bank of Anchorage: First National Bank of Anchorage, Trustee for Phina Bowers; National Association of Credit Management, Western Washington Alaska; Albert Kessler & Co.; Pacific Western Seafoods, Inc., and other parties in interest, Defendants.**

Adv. No. 3–83–0144.

United States Bankruptcy Court,
D. Alaska.

Dec. 31, 1983.

Peter W. Giannini of Giannini & Associates, Anchorage, Alaska, for plaintiff debtor, William Schlecht.

James D. Sourant of Sourant & Strandberg, Anchorage, Alaska, for The First Nat. Bank of Alaska, trustee for Phina Bowers.

## OPINION

J. DOUGLAS WILLIAMS, II, Bankruptcy Judge.

The issue before the Court is whether, subsequent to obtaining a state court judicial foreclosure judgment, The First National Bank of Anchorage, as trustee for Phina Bowers, is entitled, by reason of a provision for attorney's fees in the note which originally created the debt, to recover attorney's fees from the bankruptcy estate pursuant to Section 506(b) of the Bankruptcy Code (11 U.S.C. § 101 *et seq.,* hereinafter "Code"). The bank seeks to recover: (1) additional attorney's fees incurred in the judicial foreclosure action; (2) fees for prosecuting an action for relief from the automatic stay; and (3) fees for defending against a complaint by the then debtor-in-possession, William Schlecht, to sell certain property free and clear of all liens, interests and encumbrances, including the judgment lien of The First National Bank of Anchorage, as trustee for Phina Bowers. For the reasons given below, this Court holds that The First National Bank of Anchorage is not entitled to recover any of the requested attorney's fees from the bankruptcy estate.

## FACTS

Phina Bowers originally conveyed two parcels of land located to the east and west of the Sterling Highway to William Schlecht ("debtor"), and received back a note secured by a deed of trust. The note contained a provision that "if suit is instituted upon this note, the undersigned jointly and severally agree to pay all costs and expenses so incurred by the holder of this note, including attorney's fees." Bowers subsequently released the deed of trust on the *east* parcel.

The debtor defaulted in his payments on the note, and The First National Bank of Anchorage, as trustee for Phina Bowers, ("bank") brought a judicial foreclosure action against the debtor on the note and deed of trust securing the *west* parcel in the Superior Court for the State of Alaska. On November 17, 1980, the Superior Court entered a default judgment, ordering a judicial foreclosure of the *west* parcel and entering judgment against the debtor in the amount of $48,152.51, which included attorney's fees of $397.00. The judgment also provided that the bank had leave of the Court to file a Motion for Entry of Deficiency Judgment if the judgment was not satisfied by the foreclosure sale.

The *west* parcel was sold to the bank for an offset bid of $30,000.00, and an order confirming the sale was entered by the Superior Court on June 4, 1981. The bank did not, in the state court proceeding, request any additional attorney's fees in connection with the foreclosure proceedings. A Notice of Deficiency was filed by the bank on January 12, 1982, by which the bank became a judgment lien creditor against the *east* parcel.

Under Alaska law, the debtor had one year from the entry of the order confirming the sale in which to redeem the *west* parcel. On June 4, 1982, the last day of the redemption period, the debtor filed a Chapter 11 petition.[1] The bank filed a complaint requesting that the automatic stay be lifted so a deed of conveyance to the *west* parcel could be made. Litigation followed as to whether and for how long the filing of the bankruptcy petition extended the redemption period, which litigation was eventually settled, so a deed to the *west* parcel could be conveyed to the bank.

On May 6, 1983, as debtor-in-possession, the debtor filed a complaint to sell the *east* parcel free and clear of all liens, encum-

---

1. The case has subsequently been converted to a Chapter 7 proceeding.

brances and interests, including the judgment lien of the bank. An order was entered authorizing the sale free and clear but reserving for later determination certain issues regarding the distribution of the proceeds.

Because there will be sufficient funds to pay the bank's judgment lien, the bank has requested its attorney's fees and costs pursuant to § 506(b) of the Code for the proceedings described above, in the following amounts:

|  | Attorney's Fees | Costs |
| --- | --- | --- |
| Judicial Foreclosure Sale [2] | $1,170.00 | $188.47 |
| Relief From Stay | 3,496.00 | 411.12 |
| Sale Free and Clear | 3,753.00 | 64.35 |
| Total | $8,419.00 | $663.94 |

The bank contends that it is entitled to attorney's fees under § 506(b) because the original note from which the deficiency judgment arose provided for recovery of attorney's fees. The debtor submits that the original note merged into the judgment leaving no basis for such an award.

### LAW

■ In the United States, attorney's fees are not ordinarily recoverable in the absence of a statute or contractual provision authorizing an award of attorney's fees.[3] *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Both parties have agreed that § 506(b) of the Code governs as to whether or not an award of attorney's fees can be made in this case. Section 506(b) provides:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be al-

lowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided *under the agreement under which such claim arose.* (Emphasis added.)

■ It is undisputed that the language in § 506(b) of "reasonable fees, costs, or charges" encompasses attorney's fees. S.Rep. No. 95–989, 95th Cong., 2d Sess. 68 (1978), U.S.Code Cong. & Admin.News, p. 5787. The Courts have split, however, as to whether state law is to be determinative in deciding if an attorney's fee provision in a contract is enforceable.

Under the old Bankruptcy Act, the position developed that the validity and construction of a contract for attorney's fees was a question of state law. *Security Mortgage Co. v. Powers,* 278 U.S. 149, 153–154, 49 S.Ct. 84, 85–86, 73 L.Ed. 236 (1928); *In re Morris,* 602 F.2d 826, 828 (8th Cir.1979); *In re Crafty Fox, Ltd.,* 475 F.Supp. 634, 636, 5 B.R. 820, 821 (D.C.W.D.Va.1980). The initial reports by the House of Representatives and the Senate with regard to § 506(b), as then proposed, stated that the provision was meant to codify existing law. H.Rep. No. 95–595, 95th Cong., 1st Sess. 356 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 68 (1978). Thus, the early legislative history of § 506(b) would have required the application of state law to the provision in the bank's note to determine if the provision is enforceable.

Prior to the enactment of the Code, however, § 506(b) was amended. The amended version was explained as meaning that:

> If the security agreement between the parties provides for attorneys' fees, it will be enforceable under Title II [sic], *notwithstanding contrary law,* and is recov-

---

**2.** The $1,170.00 requested is for attorney's fees in excess of those which were allowed in the state court judgment, but which were incurred prior to the state court order confirming the sale.

**3.** Although Alaska provides for attorney's fees by rule in Rule 82, Alaska Rules of Civil Procedure, state law with respect to attorney's fee awards is applied by a federal bankruptcy court only when the bankruptcy court is exer-

cising jurisdiction over a dispute involving state law. *Matter of Sparkman,* 703 F.2d 1097, 1099 (9th Cir.1983); *In re Sonoma V,* 23 B.R. 789, 796 (Bkrtcy.App. 9th Cir.1982). Since the proceedings here involved requests for relief from stay and for a sale free and clear of liens, encumbrances and interests, both of which are grounded in federal bankruptcy, and not state, law, Rule 82 is irrelevant.

erable from the collateral after any recovery under Section 506(c).

124 Cong.Rec. S17411 (daily ed. Oct. 6, 1978). *See also* 124 Cong.Rec. H11095 (daily ed. Sept. 28, 1978) (similar remarks by Representative Edwards, floor manager of the House bill).

Several courts have relied on the later legislative history in holding that state law is no longer determinative with regard to attorney's fee provisions in security agreements. *In the Matter of Scarboro*, 13 B.R. 439, 442, 8 B.C.D. 72, 73, 4 C.B.C.2d 1222, 1225–1226 (D.C.M.D.Ga.1981); *In the Matter of Elmwood Farm, Inc.,* 19 B.R. 338, 341, CCH Bkr.L.Rptr. ¶ 68779 (Bkrtcy.S.D.N.Y. 1982); *In re Carey,* 8 B.R. 1000, 1003–1004, 7 B.C.D. 310, 311–312, CCH Bkr.L.Rptr. ¶ 67847 (Bkrtcy.S.D.Ca.1981). Other courts, however, have continued to look to state law in construing these provisions. *In re Triangle Equipment Co.,* 26 B.R. 175, 177 (D.C.W.D.Va.1982); *In re Dawson,* 32 B.R. 179, 180 (Bkrtcy.W.D.Mo.1983); *In re Dye Master Realty, Inc.,* 15 B.R. 932, 935–936, CCH Bkr.L.Rptr. ¶ 67828, 8 B.C.D. 475, 478 (Bkrtcy.W.D.N.C.1981); *In re Cipriano,* 8 B.R. 697, 698 (Bkrtcy.R.I.1981); *In re Ruck,* 4 B.R. 194, 195 (Bkrtcy.Az.1980). None of the cases looking to state law discussed the impact of the legislative history of § 506(b) on the cases decided under the old Act.[4]

Whether an attorney's fee provision may be enforced under state law may involve various factors depending on the state statutes and common law involved. In *In re Dye Master Realty, Inc., supra,* North Carolina law required that notice be given to the maker of the note that the attorney's fee provision would be enforced if the outstanding balance was not paid within five days. The California statute in *In re Carey, supra,* provided that only the prevailing party was entitled to enforce an attorney's fee provision, and the prevailing party was defined as the party in whose favor final judgment was rendered. If the California state statute were determinative, secured creditors who were involved in litigation and received more as a result of that litigation could not be awarded attorney's fees if final judgment was actually rendered in the trustee's (or debtor-in-possession's) favor.

The legislative history of § 506(b), however, cannot be overlooked. Congress intended that the question of the enforceability of attorney's fees provisions no longer be determined by state law. As explained in 3 Collier on Bankruptcy ¶ 506.05 at 506–41 (1983):

... The better view would appear to be that the validity of such provisions should be determined by federal law (*i.e.,* Section 506(b)). This view has the benefit of removing questions as to the compliance with state law notice requirements in the context of bankruptcy cases, where such notices do not serve the purpose for which they were intended and may ultimately lead to such further issues as whether the automatic stay prohibits the giving of such notices.

In addition, determining the validity of provisions by federal law removes the requirement of determining which party is prevailing, in regard to state statutes which impose such as a condition to recovering attorney's fees. As noted above, because of the unique nature of bankruptcy procedure a secured creditor may better his position through litigation yet may not be the prevailing party. In such a situation, an oversecured creditor should be entitled to recov-

---

4. Most of the courts in the above-cited cases appear to have been unaware of the legislative history of § 506(b). For example, in *In re Dye Master Realty, Inc.,* 15 B.R. at 935, the court, while aware of the decision in Scarboro, stated that it:

... continues to recognize the state of the law in the Fourth Circuit that provides that before a creditor's attorneys fees can be awarded under Section 506(b), and thus made part of the secured claim of that credi-

tor, there must have been compliance with the applicable state law as to fulfillment of any conditions precedent to such recovery.

In *In re Cipriano,* 8 B.R. at 698, the Court stated that "it is well settled that in a bankruptcy proceeding the enforceability of a clause in a note providing for attorney's fees is a matter of state law", and cited several old Act cases in support of the proposition. A similar conclusion was reached in *In re Ruck,* 4 B.R. at 195, again relying on an old Act case.

er reasonable attorney's fees provided they are within the scope of an agreement that is enforceable under § 506(b).

The remaining issue is whether the doctrine of merger is only a state law doctrine. If it is only a state law doctrine, then it should not be applied in a bankruptcy proceeding to find that the bank's note merged into its Superior Court judgment. The bank would then be correct in asserting that it still has an agreement providing for attorney's fees. However, if merger is also a federal doctrine, the debtor's position that the agreement no longer exists is correct.

■ The doctrine of merger is one aspect of the larger principle of res judicata. 46 Am.Jur.2d *Judgments* § 383 (1969). The general rule of merger is that when a valid and final personal judgment is rendered in favor of the plaintiff, the plaintiff cannot maintain a subsequent action on any part of the original claim. Restatement, Second, Judgments § 18 (1980). The original claim merges into the final judgment. The effect of the merger is that the old debt ceases to exist and the new judgment debt takes its place. The judgment becomes "the evidence of the debt, or the sole test of the rights of the parties...." 46 Am.Jur.2d *Judgments* § 390 (1969) (footnotes omitted).

In *Montana v. United States,* 440 U.S. 147, 153–154, 99 S.Ct. 970, 973–974, 59 L.Ed.2d 210 (1979), the Supreme Court applied the doctrine of res judicata in a federal case and stated that the doctrine is a "fundamental precept of common law adjudication ..." and that:

To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their ad-versaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions [footnote omitted].

■ When judgment is rendered on a note, the note becomes entirely merged in the judgment and no longer binds the parties to it. The note itself no longer has any legal effect; all of its remaining liability is transferred to the judgment.[5] *Rock Island Bank & Trust Co. v. Stauduhar,* 59 Ill. App.3d 892, 17 Ill.Dec. 99, 105, 375 N.E.2d 1383, 1389 (1978).

■ As indicated previously, state statutes dealing with attorney's fee provisions which Congress intended to circumvent with regard to § 506(b) contain various technicalities, such as whether the creditor is the prevailing party or whether the debtor had been given sufficient notice that the attorney's fee provision would be enforced. Such statutes vary from state to state, if the state has such a statute at all.[6] The doctrine of merger, however, is a common law principle applied throughout all state and federal forums, in a basically consistent manner. It is, as the Supreme Court pointed out in *Montana v. United States, supra,* fundamental to our judicial system. Congress could not have intended to exclude the application of a basic doctrine such as merger when it said that attorney's fee provisions would be enforced, contrary law notwithstanding. Rather, the Congressional intent was to bypass only those specific state statutes which impose such requirements as notice before a creditor can enforce an attorney's fee provision. Accord-

---

**5.** A number of cases have found an exception to the rule where the creditor is seeking an award of attorney's fees for defending an appeal from judgment on the note, where the note contains an attorney's fee clause. *See Management Services Corp. v. Development Associates,* 617 P.2d 406 (Utah 1980); *Vaughn v. Vaughn,* 91 Idaho 544, 428 P.2d 50 (1967); Annot., 52 A.L.R.2d 863 (1957). The rationale of these cases is that the creditor should receive the full amount of the debt owed without deduction for legal expenses. However, no cases have been cited to the court which extend that

rationale to subsequent actions to collect on the judgment either in a state forum or in a bankruptcy court, as opposed to defending an appeal from the judgment. An extension of the exception to the general rule that the note merges into the judgment to allow for recovery of attorney's fees in collateral collection actions would undercut the doctrine of merger.

**6.** The parties have not cited any Alaska statute relating to the enforceability of attorney's fee provisions.

ingly, the doctrine of merger is applicable in this case. Therefore, the bank's note containing the provision for attorney's fees has merged with its Alaska Superior Court judgment. There is no longer an agreement pursuant to which attorney's fees can be awarded under § 506(b).[7]

Denying the bank its attorney's fees does not create a victory of form over substance.[8] Prior to the filing of the deficiency judgment creating a judgment lien on the *east* parcel, the bank was an undersecured creditor with recourse only to the *west* parcel. If the debtor had filed bankruptcy at that time, the bank would have been a secured creditor under § 506(a) only to the extent of the value of the *west* parcel, and would have been an unsecured creditor for the remainder of its debt. Because of the foreclosure sale and the entry of the deficiency judgment which was recorded against the *east* parcel, the bank became a judgment lien creditor for the amount which was previously unsecured. The bank's status as a *secured* creditor with regard to the *east* parcel arose not from the note, but from the recorded deficiency judgment.

Accordingly, the bank is not entitled to an award of the requested attorney's fees, and an order will be entered accordingly.

---

**7.** Even if there was still an agreement as to attorney's fees, the doctrine of res judicata would prevent an additional award of fees incurred in the judicial foreclosure and sale, as the Alaska Superior Court made an award of fees at the time the default judgment was entered, with leave to file a Motion for Entry of Deficiency Judgment if the proceeds from the sale were inadequate. Generally, the costs of the foreclosure sale, including any additional attorney's fees, are deducted from the proceeds of the sale, leaving a larger deficiency judgment to be entered. Even if the bank failed to seek an award of all its fees for the foreclosure proceeding from the Superior Court, the order entered by the Superior Court precludes the issue from being further litigated. No exceptions, if any, to the general rule of res judicata have been argued which would prevent such an

effect, and this Court has not considered any exceptions.

**8.** It should be noted that this decision does not stand for the proposition that attorney's fees will never be awarded to a creditor who held a note and deed of trust providing for attorney's fees but which note has merged into the state court order confirming the sale of the secured property. The issue is not reached as to whether attorney's fees may be awarded to a creditor with a contractual provision for attorney's fees who is overly secured by a deed of trust or mortgage and who must litigate in the bankruptcy court in order to complete the conveyance of the property upon which the creditor has foreclosed.