**In the Matter of Irving SCHWARTZ, Debtor.**

**Bankruptcy No. 1–86–01477.**

United States Bankruptcy Court, S.D. Ohio, W.D.

Aug. 11, 1987.

Robert A. Goering, Wilke & Goering, Cincinnati, Ohio, for debtor.

Robert B. Craig, Taft, Stettinius & Hollister, Cincinnati, Ohio, for First Nat. Bank of Cincinnati.

J. Michael Debbeler, Lerner, Sampson & Rothfuss, Cincinnati, Ohio, for Community Federal Sav. & Loan.

## ORDER

RANDALL J. NEWSOME, Bankruptcy Judge.

This Chapter 13 case is before the Court pursuant to the debtor's objections to awarding attorneys' fees on the secured claim of Community Federal Savings & Loan ("Community"), and interest and attorneys' fees on the secured claim of the First National Bank of Cincinnati ("First National"), all pursuant to 11 U.S.C. § 506(b).

The relevant facts are undisputed: In May of 1972 a predecessor of Community loaned the debtor, Mr. Irving Schwartz, $110,000 to purchase a parcel of real estate in Covington, Kentucky. This parcel subsequently became the home of WCLU Broadcasting Co., Inc. which was solely owned by Schwartz. The note provided for 8¼% interest per annum, and was secured by a first mortgage on the property.

In October of 1980 WCLU borrowed $12,500 from First National. The note, which Schwartz signed both on behalf of WCLU as President and personally as an endorser, includes a provision that, "[t]he obligors shall pay on demand all costs of collection and attorneys' fees incurred or paid by the holder in enforcing this note."

On July 6, 1983 Community's predecessor instituted foreclosure proceedings in the Circuit Court of Kenton County, Kentucky. The Kentucky National Bank of

Kenton County, which held a judgment lien against the property, was named as a defendant in addition to Schwartz. On March 5, 1984 a default judgment and order of sale were entered against Schwartz. This judgment was reversed by the Kentucky Court of Appeals on March 5, 1985. The matter was remanded back to the Circuit Court, and a trial before the Master Commissioner was commenced on October 2, 1985.

On December 9, 1985, the Circuit Court of Kenton County, Kentucky issued a judgment on First National's note against WCLU and Schwartz in the sum of $17,679.97 plus interest at the rate of 12% per annum ($3.39 per day). This judgment apparently was rendered pursuant to a consent judgment issued by the Court of Common Pleas of Hamilton County, Ohio on November 2, 1983. The Kentucky judgment was subsequently perfected into a lien on the Covington property by the filing of a notice of execution on January 17, 1986. Apparently, First National also became a party to Community's foreclosure action at about this same time.

Pursuant to a report filed by the Master Commissioner on March 31, 1986, the Circuit Court entered an Order of sale and judgments in favor of Community in the sum of $119,841.82 plus interest of $21.09 per day, and in favor of First National in the sum of $17,679.97 plus 12% interest per annum.

Schwartz appealed this judgment, but the appeal was dismissed for failure to file an appeal bond. The sale of the property, which was scheduled for May 6, 1986, was stayed by the filing of this Chapter 13 case on May 2, 1986.

After several months of additional legal wrangling, on March 31, 1987, Schwartz sold the real estate and WCLU for $465,900, netting $284,836.92 to Schwartz.

Out of the sale proceeds, Community was paid $125,844.88. Pursuant to this Court's order, an additional $9,108.90 was escrowed pending this Court's determination of Community's entitlement to attorneys' fees under 11 U.S.C. § 506(b).

First National was paid $20,407.69. Schwartz subsequently objected to this pay-out figure, and now seeks to have some $2,378.62 refunded to him on the grounds that the bank was only entitled to $18,523.97, the amount of principal and interest which had accrued up to the date of the filing of the Chapter 13 petition. First National rejoins that it was entitled to postpetition interest of $878.62 and $1500 in attorneys' fees under § 506(b).

As counsel correctly note, the starting point for determining whether Community and First National are entitled to attorneys' fees is 11 U.S.C. § 506(b).[1] The greater weight of authority holds that regardless of state law to the contrary, this section entitles oversecured claimants to reasonable costs and fees, so long as the right to such fees and costs is clearly spelled out in the lending instruments. *See, e.g., Unsecured Creditors' Committee v. Walter E. Heller & Co.,* 768 F.2d 580 (4th Cir.1985); *In re Laza,* 69 B.R. 669, 671 (Bankr.E.D.N.Y.1987).

However, the right afforded by § 506(b) is supplemental to, and not an abrogation of, any right to attorneys' fees which unsecured or undersecured creditors may have under the loan documents and applicable state law *In re Martin,* 761 F.2d 1163, 1167–68 (6th Cir.1985); *In re United Merchants and Mfrs., Inc.,* 674 F.2d 134, 138 (2d Cir.1982).

All parties agree that the claims in question are oversecured, since the sale proceeds far exceed the amount of the liens. They sharply disagree, however, on whether the agreements can be enforced, and in the case of Community, whether the agreement clearly calls for payment by the debtor of attorneys' fees arising out of collection proceedings.

---

1. Section 506(b) reads as follows:
   "To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose."

Citing *In re Schlecht*, 36 B.R. 236 (Bankr.D.Alaska 1983), counsel for the debtor first asserts that it no longer matters whether the claimants' lending agreements provide for attorneys' fees and costs, because the judgments they obtained supplanted any rights they had under those agreements under the doctrine of merger by judgment. The elements of this doctrine are well-summarized in the *Schlecht* decision:

> The doctrine of merger is one aspect of the larger principle of res judicata. 46 Am.Jur.2d Judgments § 383 (1969). The general rule of merger is that when a valid and final personal judgment is rendered in favor of the plaintiff, the plaintiff cannot maintain a subsequent action on any part of the original claim. Restatement, Second Judgments § 18 (1980). The original claim merges into the final judgment. The effect of the merger is that the old debt ceases to exist and the new judgment debt takes its place. The judgment becomes "the evidence of the debt, or the sole test of the rights of the parties ..." 46 Am. Jur.2d Judgments § 390 (1969) (footnotes omitted).

36 B.R. at 240.

This doctrine has been almost universally accepted in both federal and state courts *See, e.g., Montana v. U.S.*, 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979); *George v. United Kentucky Bank, Inc.*, 753 F.2d 50, 52 (6th Cir.1985) *cert. denied*, 471 U.S. 1018, 105 S.Ct. 2024, 85 L.Ed.2d 306 (1985); *Letcher County v. DeFoe*, 151 F.2d 987, 991 (6th Cir.1945); *Sharp v. Bannon*, 258 S.W.2d 713, 715 (Ky.1953); *Daniels v. Runyons*, 164 Ky. 309, 175 S.W. 338, 340 (1915) (dicta); *Whitehead v. General Telephone Co.*, 20 Ohio St.2d 108, 254 N.E.2d 10 (1969).

█ For the reasons set forth in *Schlecht*, we find this doctrine squarely

applicable to the claim of First National. The record before us contains nothing to indicate that the question of attorneys' fees was or was not litigated before either the Ohio or Kentucky state courts. The Kentucky judgment, upon which First National's claim here is based, also awarded post-judgment interest and costs, but not attorneys' fees. Once the Kentucky court entered its final judgment, any right which First National may have had to attorneys' fees under the note was extinguished.

Since the parties' agreement ceased to exist as of December 9, 1985, it follows that First National has no right to fees under § 506(b). While the doctrine of merger must be tempered by equitable considerations, (*Letcher County v. DeFoe, supra*, at 991) we perceive no equitable basis for carving out an exception to the general rule in this case.[2]

Community's claim for attorneys' fees stands on a different footing. While it is true, as debtor's counsel asserts, that Community obtained a final judgment on its note and mortgage pursuant to the Kenton County Circuit Court's March 27, 1986 judgment and order of sale, it has long been the rule, both in Kentucky and most other jurisdictions, that a mortgagee's lien rights are not extinguished until the sale of the property has been consummated. *Anderson v. Board of Drainage Comm'rs.*, 293 Ky. 449, 169 S.W.2d 289 (1943); *Metcalf v. Tewmey*, 220 Ky. 787, 791, 295 S.W. 1052 (1927); *Lear v. Totten*, 77 Ky. 101, 103 (1878). The reason for the rule is apparent: between the time of the order for sale and the sale, the mortgagee might be required to make additional expenditures to protect its security interest, such as paying taxes, insurance and assessments, as well as costs and attorneys' fees. *Cf., GESA Fed. Credit Union v. Mutual Life Ins. Co.*, 39 Wash.App. 875, 696 P.2d

---

**2.** First National seems to assert that because its judgment was against both Schwartz and WCLU jointly, and since only Schwartz was a debtor, § 506(b) does not apply as to WCLU, and it was free to charge WCLU for fees. This argument is without merit for at least two reasons. First, its judgment lien was only on the real estate, which was solely owned by the debtor. Its fees were paid solely out of the sale proceeds from the

real estate, which was property of the debtor's bankruptcy estate. No execution was ever made on WCLU. Thus, § 506(b) does apply. Second, the doctrine of merger by judgment extinguished First National's cause of action for attorneys' fees against both Schwartz and WCLU irrespective of this bankruptcy, since the judgment awarded fees against neither defendant.

607 (1985). If the mortgage lien merged into the foreclosure decree, the mortgagee would be deprived of the right to add these payments to the mortgage debt. *See, e.g., Wyoming Bldg. & Loan Ass'n. v. Mills Constr. Co.*, 38 Wyo. 515, 269 P. 45, 60 ALR 418 (1928). He might also be denied any right he might have to rents and profits which the property generates after the order of sale. *See, e.g., Prudence Co. v. 160 West Seventy-Third Street Corp.*, 260 N.Y. 205, 183 N.E. 365 (1932).

The specific holding of *In re Schlecht* lends no support to debtor's argument. That case involved a mortgagee which held a deficiency judgment against the debtor arising from a foreclosure sale on one piece of property. By filing a notice of deficiency, the bank became a judgment lienholder on a different parcel held by the debtor. While the Court found the merger doctrine to apply to this judgment lien, it did so with the following reservation:

> The issue is not reached as to whether attorney's fees may be awarded to a creditor with a contractual provision for attorney's fees who is overly secured by a a deed of trust or mortgage and who must litigate in the bankruptcy court in order to complete the conveyance of the property upon which the creditor has foreclosed.

*In re Schlecht*, 36 B.R. 236, 241 n. 8 (Bankr.D.Alaska 1983)

■ While Community's right to fees was not extinguished by the foreclosure judgment, the extent of that right is less than clear. Although four separate paragraphs in the mortgage speak of a right to attorneys' fees under certain circumstances, none of those paragraphs provides for a right to fees arising from collection or foreclosure proceedings. Indeed, these paragraphs refer to payment of attorneys' fees under other specifically-described circumstances. Paragraph 7, entitled "Protection of Lender's Security," deals with the lender's right to intervene in actions affecting the property and to "disburse such sums and take such action as is necessary to protect Lender's interest, including ... disbursement of reasonable attorney's fees and entry upon the Property to make repairs." The lender is given the right to add such disbursements to its mortgage lien.

Paragraph 19 requires the borrower to pay the lender's attorneys' fees in a foreclosure proceeding if the borrower ultimately attempts to redeem the property and reinstate the mortgage; and paragraph 20 entitles the lender to have a receiver appointed upon acceleration, with the receiver's costs and attorneys' fees to be paid ahead of sums secured by the mortgage.

Significantly, paragraph 18, which deals with the mortgagee's right to accelerate and foreclose the mortgage allows the lender to collect "all expenses of foreclosure, including, but not limited to, costs of documentary evidence, abstracts and the reports." The conspicuous absence of any mention of attorneys' fees in this provision is almost certainly explained by the fact that in 1972, when the mortgage was executed, the settled law of both Kentucky and Ohio (where the mortgage was executed) was that provisions for fees arising out of collection and foreclosure proceedings were unenforceable as against public policy.[3] *Fidelity Trust & Safety-Vault Co. v. Ryan*, 109 Ky. 240, 58 S.W. 610 (1900); *Leavans v. Bank*, 50 Ohio St. 591, 34 N.E. 1089 (1893) *Coe v. Columbus, Pg. & Ind. R.R. Co.*, 10 Ohio St. 372 (1859); *Swing v. Swing*, 24 Ohio App. 464, 158 N.E. 194 (1925) Given the document's detail regarding other points as well as its length, we can only conclude that its drafter purposefully excluded a provision for fees in paragraph 18, because such a provision would have been unenforceable under then-applicable law.

■ Accordingly, we conclude that no right to fees arising from foreclosure proceedings can be inferred from paragraphs 7, 18, 19 or 20, and that the mortgage lacks the specificity required under § 506(b). *C.f., In re KDI Corp.*, 2 B.R. 503, 516–17 (Bankr.S.D.Ohio 1980) (Perlman, J.)

**3.** Kentucky abrogated its common law rule by statute in 1980 (K.R.S. § 453.250, superceded in 1984 by the enactment of K.R.S. § 411.195). The statute has been applied retroactively in cases where the lending documents specifically provide for fees in collection and foreclosure proceedings. *Central Kentucky Production Credit Assoc. v. Smith*, 633 S.W.2d 64 (Ky.1982).

The last issue raised by the debtor concerns First National's right to postpetition interest as a judgment lienholder. While the case law on this question is split, and the debtor's argument is supported by at least one commentator (3 Collier on Bankruptcy ¶ 506.05 at pg. 506–43 (15th Ed. 1986), we are compelled to follow the Sixth Circuit's clear statement in *In re Colegrove*, 771 F.2d 119, 122 (6th Cir.1985), that § 506(b) provides for interest "... on all allowed secured claims where the value of the security is greater than the claim." *See, In re Henzler Mfg. Co.*, 55 B.R. 194 (Bankr.N.D.Ohio 1985) and cases cited therein.

Accordingly, for the reasons stated above, the debtor's objection to Community's claim for attorneys' fees is hereby GRANTED. The debtor's objection to First National's claim is GRANTED as to the payment of attorneys' fees, but DENIED as to the payment of postpetition interest. First National is hereby ordered to refund to the debtor the difference between interest which has accrued since the date of the sale (122 days × $3.39) and the $1500 in attorneys' fees which it has previously received.

IT IS SO ORDERED.