**In re CLARK GRIND & POLISH, INC., Debtor.**

**CLARK SCREW MACHINE PRODUCTS COMPANY, INC., Movant,**

**v.**

**CLARK GRIND & POLISH, INC., Respondent.**

Bankruptcy No. 88–1470PGH. Motion Nos. 91–4867, 88–5822 and 88–5468.

United States Bankruptcy Court, W.D. Pennsylvania.

March 6, 1992.

terless Grinding Department. In consideration for these assets, Debtor executed, *inter alia*, a Judgment Note for $435,000 ("Note"), a Mortgage ("Mortgage") on the real estate transferred to the Debtor, an Asset Purchase Agreement (the "Asset Purchase Agreement") and UCC Financing Statements. Conspicuously absent is a document entitled "Security Agreement."

The parties agree that the Application must be examined under 11 U.S.C. § 506(b).[1] Clark Screw asserts that it has met all the requirements of § 506(b) and is entitled to the fees and expenses requested.

It is agreed that Clark Screw is oversecured. Debtor asserts, however, that 1) there is no contractual provision providing for fees in the security agreement; 2) if the agreement concerning counsel fees contained in the Note relates to the security agreement, the Note only authorizes fees for confession of judgment, and not for activities performed in the Bankruptcy Court; 3) the doctrine of merger precludes Clark Screw from receiving any fees in excess of $19,747.81 for which Clark Screw confessed judgment; and 4) the fees charged by Clark Screw are unreasonable.

Edward A. Olds and Morton B. De Broff, Pittsburgh, Pa., for debtor.

Samuel R. Grego and Joseph Friedman, Pittsburgh, Pa., for Clark Screw Machine Products Co., Inc.

## OPINION

WARREN W. BENTZ, Bankruptcy Judge.

### Background

Before the Court is the Application ("Application") of Clark Screw Machine Products Company, Inc. ("Clark Screw") for allowance of attorneys' fees in the amount of $67,285.75 and expenses in the amount of $6,055.93 as part of its secured claim against Clark Grind & Polish, Inc. ("Debtor"). We will also consider pending Motions and a Counter–Motion for Sanctions.

The principal debt that forms the basis for Clark Screw's secured claim arises out of a May 1, 1984 transaction in which the Debtor purchased substantially all of the assets and goodwill of Clark Screw's Cen-

### Discussion

#### I. Contractual Provision for Fees

■ Although we have not been directed to any document entitled "Security Agreement," Clark Screw asserts that the Asset Purchase Agreement grants it a security interest in the personal property of the Debtor. Indeed, the Debtor, in its objection to the Application, refers to the Asset Purchase Agreement as a "Security Agreement."

"When the parties have neglected to sign a separate security agreement, it would appear that the better and more practical view is to look at the transaction as a whole in order to determine if there is a writing, or writings, signed by the debtor

---

1. 11 U.S.C. § 506(b) provides: "To the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be al-
lowed to the holder of such claim, interest on such claim, and any reasonable fees, costs or charges provided for under the agreement under which such claim arose."

describing the collateral which demonstrates an intent to create a security interest in the collateral." *In re Bollinger Corp.*, 614 F.2d 924 (3d Cir.1980).

We begin our examination of the transaction with the Note which provides that "[t]his Note is secured by a Mortgage of even date herewith upon the real estate described herein." The Note further provides:

> ... the [Debtor] authorizes and empowers any prothonotary or any attorney of any court of record within the United States of America or elsewhere, in the event of default, to appear for the Undersigned and confess judgment for the unpaid balance the debt secured by this Note, *together with costs of suits and reasonable attorneys' commission.* For purposes of this Note, a delay of ten (10) days or more in any of the above-specified payments or any default as specified in the Mortgage and/or Asset Purchase Agreement between the parties of even date herewith, shall constitute a default. (Emphasis added.)

The Mortgage incorporates the terms of the Note by reference. The Mortgage further provides that it "is subject to the terms and conditions of the Asset Purchase Agreement ... which ... is specifically incorporated herein by reference." In regard to attorneys' fees and costs, the Mortgage provides:

> In case default ..., the entire unpaid balance of said principal sum, and all other sums paid by Mortgagee pursuant to the terms of the Note or this Mortgage, together with unpaid interest thereon, shall at the option of Mortgagee and without notice become immediately due and payable, and foreclosure proceedings may be brought forthwith on this Mortgage and prosecuted to judgment, execution and sale for the collection of the same, *together with costs of suit and an attorney's commission for collection of the total indebtedness.* (Emphasis added.)

Paragraph 7 of the Asset Purchase Agreement provides that upon default, "all unpaid principal, interest, and penalty charges under the Note" shall be due and payable. A provision for attorney's fees in a note is in the nature of a penalty. *In re Crane Automotive, Inc.*, 98 B.R. 233 (Bankr.W.D.Pa.1989). Thus, the Asset Purchase Agreement contemplates that upon default, the costs of suit and Attorney's Fees provided for under the Note become due.

The Asset Purchase Agreement, at paragraph 2(b)(iv), indicates that, at closing, the Debtor will grant and deliver to Clark Screw a security interest in the items listed in paragraph 1 to secure payment of the Note. In compliance with the provision, the Debtor executed UCC Financing Statements.

The cross references between the Note, Mortgage, and the Asset Purchase Agreement, combined with the UCC Financing Statements, demonstrate the requisite intent to create a security interest in personalty sold to the Debtor in favor of Clark Screw to secure the Note.

The provisions of the Asset Purchase Agreement providing for the payment of penalties under the Note and the provisions of the Note and Mortgage providing for the payment of attorney's fees and costs evidence the Debtor's agreement to reimburse Clark Screw for attorney's fees and costs incurred in the collection of its debt. Pennsylvania law validates and enforces such contractual provisions for reasonable attorney's fees. *See e.g., Wrenfield Homeowners Association, Inc. v. DeYoung,* —— Pa.Super. ——, 600 A.2d 960 (1991); *Federal Land Bank of Baltimore v. Fetner,* 269 Pa.Super. 455, 410 A.2d 344 (1979).

The Debtor asserts that such fees and costs, if allowed at all, are limited to fees for confession of judgment and that fees for services performed in the Bankruptcy Court are not compensable.

We do not glean such a limitation from the agreement of the parties. The documents evidence an intent to reimburse Clark Screw for its costs of collection. To the extent that such collection efforts involve proceedings in Bankruptcy Court, Clark Screw is entitled to reimbursement of attorney's fees and costs for those pro-

ceedings. *In re PCH Associates*, 122 B.R. 181 (Bankr.S.D.N.Y.1990); *In re Schwartz*, 87 B.R. 41 (S.D.Ohio 1988) *aff'g.* 77 B.R. 177 (Bankr.S.D.Ohio 1977); *In re Sheppley & Co.*, 62 B.R. 279 (Bankr.N.D.Iowa, E.D. 1986); *In re Salisbury*, 58 B.R. 635 (Bankr. D.Conn.1985). *But see First Brandon Nat'l Bank v. Kerwin–White*, 109 B.R. 626 (D.Vt.1990); *In re Garnett*, 99 B.R. 293, 296–97 (Bankr.E.D.Pa.1989).

## II.  Merger

The Debtor asserts that Clark Screw's right to attorney's fees and costs merged with its judgment and therefore, Clark Screw is precluded from receiving any fees in excess of $19,747.81 for which Clark Screw confessed judgment.

■ Once Clark Screw entered judgment on the Note, any right it had to attorney's fees and costs under the *Note* was extinguished. *In re Schwartz*, 77 B.R. at 180. However, Clark Screw's lien rights under the Mortgage and Asset Purchase Agreement are not extinguished until it receives payment. *Id.* at 180–81. The lien created by the Mortgage and Asset Purchase Agreement remains despite the presence of the judgment. *In re Blakeney*, 126 B.R. 449, 457 (Bankr.E.D.Pa.1991) and *In re Stendardo*, 117 B.R. 833 (Bankr.E.D.Pa. 1990).

■ Between the time of judgment and the time the secured creditor receives payment, the secured creditor may be required to make additional expenditures to protect its security interest and its collateral. The amount of fees asserted in the judgment is not binding where there is an intent to allow the secured creditor to recoup its costs in fully realizing upon its claim. *In re PCH Associates*, 122 B.R. at 203–04. Such costs include defending the claim in bankruptcy proceedings.

The Mortgage and Asset Purchase Agreement contemplate that liability for fees and costs would continue until the debt was paid. Clark Screw may include these charges as part of its secured claim subject to this Court's determination of the reasonableness of such charges. *Id.; In re Builders and Manufacturers Supply Co.,*

*Inc.*, 235 F.Supp. 453 (W.D.Pa.1964); *In re Computer Optics, Inc.*, 126 B.R. 664, 667 n. 3 (Bankr.D.N.H.1991).

## III.  Reasonableness

■ The test of such a fee must be its reasonableness, determined by the provisions of the Bankruptcy Code. *In re Hudson Shipbuilders, Inc.*, 794 F.2d 1051 (5th Cir.1986); *In re Korangy*, 106 B.R. 82 (Bankr.D.Md.1989); *In re Wonder Corp. of America*, 72 B.R. 580 (Bankr.D.Conn.1987), *aff'd.* 82 B.R. 186 (D.Conn.1988).

■ The following factors are relevant in a determination of the reasonableness of attorney's fees in the bankruptcy context:

1.  necessity of the service
2.  time and labor required
3.  novelty and difficulty of the issues
4.  skill requisite to perform the service
5.  preclusion of other employment
6.  customary fee
7.  whether the fee is fixed or contingent
8.  time pressures
9.  amount involved
10. results obtained
11. experience, reputation and ability of attorneys
12. progress of the case
13. adequate documentation

*See e.g. In re Hudson Shipbuilders, Inc.*, 794 F.2d 1051 (5th Cir.1986); *In re Wonder Corp. of America*, 72 B.R. 580 (Bankr. D.Conn.1987), *aff'd.* 82 B.R. 186 (D.Conn. 1988).

■ A thorough review of the Application reveals that counsel for Clark Screw rendered many hours of service which were not reasonably necessary in the exercise of excessive caution or overzealous advocacy. The Application reveals excessive duplication in the number of attorneys appearing at conferences, depositions and hearings. An inappropriate number of hours is spent on intra-office conferences discussing status, progress and strategies. We also find excessive hours for reviewing files and an

inordinate amount of time for research and writing briefs.

A substantial part of the services rendered had the effect of delaying, rather than hastening the reorganization process. This is a situation where an oversecured creditor failed to exercise normal considerations of business judgment and failed to exercise appropriate restraint. Further, the Application reveals blatant overcharges. On September 23 and 25, 1989, Counsel for Clark Screw billed 1.35 hours for preparing, revising and mailing a letter to this Court. On September 14 and 17, 1990, Counsel bills an additional 1.6 hours for preparing, revising and mailing an additional letter to this Court. An examination of these letters reveals that the letters are virtually identical. Preparing and revising the second letter would take, at most, 10 minutes.

Where it is clear, as in the present case, that the activity and the charges of counsel are not reasonable, a substantial discount from the requested fees is justified.

Accordingly, we will allow Clark Screw reimbursement of counsel fees in the total amount of $20,000 for services rendered both pre- and post-petition. We will allow reimbursement of expenses in the amount of $5,500 which reflects a reduction of $555.93, the amount which we find relevant to excessive research. The total of $25,500 shall be added to Clark Screw's secured claim.

### Sanctions

█ Clark Screw's first Motion for Sanctions arises from the conduct of Debtor's counsel at the depositions of Mr. Owczarzak, the Debtor's President. By way of Counter–Motion, Debtor's counsel seeks reimbursement of expenses incurred in responding to Clark Screw's Motion for Sanctions.

A review of the transcript of the depositions reveals that Attorney De Broff engaged in conduct which impeded the examination and obstructed the depositions. Attorney De Broff himself answered questions directed to his client, instructed his client to refuse to answer certain questions without justification and continuously and unjustifiably attacked the forms of questions propounded to the Deponent.

Clark Screw's second Motion for Sanctions relates to Attorney De Broff's failure to appear at a hearing scheduled for September 23, 1988 at 11:30 a.m.

Attorney De Broff did appear prior to the hearing and advised the Court's staff that no other counsel was present and departed the Courthouse. When the case was called at 11:40 a.m., Clark Screw's counsel did appear and had been in the Courtroom prior to 11:30.

We find that the actions of Attorney De Broff are subject to sanctions. In addition to fees and costs in the amount of $25,500 added to Clark Screw's secured claim, we will impose sanctions in the amount of $2,000 payable by Attorney Morton B. De Broff to the law firm of Springer, Bush & Perry.

An appropriate Order will be entered.